S:\Files\6163_Tomex-Foods\LEGAL+DISCOVERY\6163_Amended_Complaint.doc

KENNEDY LILLIS SCHMIDT & ENGLISH
Nathan T. Williams, Esq.
75 Maiden Lane, Suite 402
New York, New York 10038
Telephone:  (212) 430-0800
Telecopier:  (212) 430-0810
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CODAN FORSIKRING A/S a/s/o Tomex Foods, ApS, and TOMEX FOODS, APS, | ) ) ) | |
| Plaintiffs, | ) ) | 17 Civ. 6921 (EEC) (SIS) |
| - v. - | ) ) | **AMENDED COMPLAINT** |
| CONGLOBAL INDUSTRIES, INC., CITY HAUL, INC., and SUMMIT COLD STORAGE CORPORATION, | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

Plaintiffs, Codan Forsikring A/S ("Codan") and Tomex Foods, ApS ("Tomex"), by and through their undersigned counsel, allege upon information and belief as follows:

<u>INTRODUCTION</u>

1.     This breach of contract and negligence action arises from damage to 53,433 pounds of frozen pork ("Cargo") owned by Tomex, insured by Codan, stored and loaded by Summit Cold Storage Corporation ("Summit"), into a refrigerated container supplied by ConGlobal Industries, Inc. ("ConGlobal"), and carried by City Haul, Inc. ("City Haul").

<u>PARTIES</u>

2.     Tomex was and is a Danish corporation with an office for the transaction of business at Hasserisvej 139, 9000 Aalborg, Denmark.

3.     Tomex owned the Cargo.

4.      Codan was and is a Danish corporation with an office for the transaction of business at Gammel Kongevej 60, DK-1790 Copenhagen V, Denmark.

5.      Codan insured the Cargo, paid Tomex's losses resulting from the incident detailed herein (less Tomex's deductible), and is thereby subrogated to Tomex's rights to the extent of that payment.

6.      Codan and Tomex bring this action on their own behalves and as agents or trustees on behalf of all having an interest in the subject shipment.

7.      ConGlobal was and is an Illinois corporation with an office for the transaction of business at 8205 South Cass Avenue, Suite 115, Darien, Illinois 60561.

8.      ConGlobal was and is registered with the United States Department of Transportation as an interstate carrier with U.S.D.O.T. number 486696.

9.      ConGlobal supplied refrigerated shipping container no. MORU131331-0 ("Container") used to transport the Cargo.

10.     ConGlobal maintains shipping routes through the State of Illinois.

11.     City Haul was and is an Illinois corporation with an office for the transaction of business at 4101 South Morgan Street, Chicago, Illinois 60609.

12.     City Haul was and is registered with the United States Department of Transportation as an interstate carrier with U.S.D.O.T. number 291255.

13.     City Haul is the interstate motor carrier that transported the Cargo.

14.     City Haul maintains shipping routes through the State of Illinois.

15.     Summit was and is an Illinois corporation with an office for the transaction of business at 5450 South Center Avenue, Summit, Illinois 60501 ("Cold Store Facility").

16.     Summit stored the Cargo at its Cold Store Facility prior to transport and loaded the Cargo into the Container for transport.

JURISDICTION & VENUE

17.     This action involves interstate transportation of goods by motor carrier. This Honorable Court has jurisdiction and venue is proper pursuant to 49 U.S.C. § 14706(d) (the "Carmack Amendment") and 28 U.S.C. § 1331.

18.     This Honorable Court has supplemental jurisdiction over Plaintiffs' causes of action arising under state law pursuant to 28 U.S.C. § 1637(a).

19.     This Honorable Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because Defendants' acts or omissions giving rise to the claim occurred within this judicial district.

BACKGROUND

20.     Before March 2016, Tomex hired Summit to store the Cargo as Summit's Cold Store Facility.

21.     In March 2016, Tomex sold the Cargo to its non-party customer Procesadora de Embutidos Hermanos Taveras, a supermarket chain in the Dominican Republic.

22.     Tomex hired (1) City Haul to carry the Cargo by truck from Summit's facility to the Landers Rail Terminal in Chicago, Illinois, and (2) Mitsui O.S.K. Lines, Ltd. ("MOL") to carry it by rail to Norfolk, Virginia and, then, by ship to the Dominican Republic.

23.     Tomex instructed Summit, City Haul, and MOL that the Cargo's temperature must be maintained at -18° C (0° F).

24.     MOL hired ConGlobal to provide the Container.

25.     MOL instructed ConGlobal to set the Container's thermostat at -18° C (0° F).

26.     However, ConGlobal set the Container's thermostat to +18° C (64.5° F).

3

27.     On or about 28 March 2016, City Haul picked up the empty Container from ConGlobal in Chicago and transported it to Summit's Cold Store Facility for loading.

28.     On or about 28 March 2016, Summit personnel loaded the Cargo, which was then in good order and frozen condition, into the Container.

29.     Before doing so, Summit did not adjust the Container's thermostat from +18°C to the required -18° C despite having been instructed to load the frozen Cargo into an adequately refrigerated container.

30.     On or about 28 March 2016, City Haul, in consideration of certain agreed freight charges, picked up, received, and accepted the Cargo as loaded by Summit, issued or accepted a bill of lading to cover the subject shipment, and agreed to carry the Cargo to Landers Rail Terminal in Chicago.

31.     City Haul did not adjust the Container's thermostat from +18°C to the required -18° C despite having been instructed carry the Cargo at -18° C.

32.     City Haul carried the Container to Conglobal, which transferred it to Landers Rail Terminal, where the Container was later ramped onto a railcar and carried to Norfolk for its intended ocean carriage to the Dominican Republic.

33.     However, upon the Container's arrival in Norfolk on 5 April 2016, MOL personnel discovered that the Cargo had thawed during carriage from Summit to Norfolk because the Container's thermostat had been set to +18°C rather than the required -18° C.

34.     As a result, the Cargo was rendered a total loss, causing Tomex to suffer losses totaling $69,356.55, as nearly as can now be determined.

35.     Tomex submitted a claim to Codan for its losses, Codan paid Tomex $67,128.88 ($69,356.55 less Tomex's $2,227.67 deductible) to settle the claim, and Codan thereby became subrogated to the rights of Tomex to the extent of that payment.

4

36.     Tomex retains uninsured losses in the amount of its $2,227.67 deductible.

## FIRST CAUSE OF ACTION AGAINST CONGLOBAL AND CITY HAUL:
### BREACH OF CONTRACT OF MOTOR CARRIAGE

37.     Paragraphs 1 through 36 are incorporated by reference as though fully set forth at length herein.

38.     As motor carriers of goods for hire, ConGlobal and City Haul were obligated by the Carmack Amendment to (a) properly and safely arrange for the receipt, delivery, transfer in transit, handling, packing, unpacking, and interchange of the Cargo, and (b) properly and safely transport, handle, carry, keep, care for, discharge and deliver the Cargo in the same good order and condition as when received by them.

39.     ConGlobal and CityHaul breached those duties by failing to set the Container's thermostat to the required -18° C (0° F) and by failing to deliver the Cargo in the same good order and condition as when received by them.

40.     As a direct and proximate cause of ConGlobal's and City Haul's breach of their duties under the Carmack Amendment, the Cargo thawed and was rendered a total loss, causing Plaintiffs to sustain damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $69,356.55.

## SECOND CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST CONGLOBAL:
### BREACH OF CONTRACT UNDER AGENCY LAW

41.     Paragraphs 1 through 40 are incorporated by reference as though fully set forth at length herein.

42.     MOL, acting as Tomex's agent, entered into a valid, binding, and enforceable contract with ConGlobal to provide a refrigerated container in which the Cargo would be loaded, packed, stowed, refrigerated, and transported.

43.     Under the contract, ConGlobal was obligated to set the Container's thermostat to -18° C (0° F).

44.     ConGlobal breached that obligation by failing to set the thermostat to -18° C (0° F) and, instead, setting it to +18°C (64.5° F).

45.     ConGlobal knew or should have known that MOL, an ocean carrier of goods for hire and not an owner/shipper of goods, was contracting on behalf of a principal, namely Tomex.

46.     Therefore, ConGlobal is liable to MOL's principal, Tomex (and Codan as Tomex's subrogee), for the damages caused by its breach of the contract.

47.     As a direct and proximate cause of ConGlobal's breach of its obligations under the contract, the Cargo thawed and was rendered a total loss, causing Plaintiffs to sustain damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $69,356.55.

### THIRD CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST CONGLOBAL: NEGLIGENCE

48.     Paragraphs 1 through 47 are incorporated by reference as though fully set forth at length herein.

49.     ConGlobal was retained to provide a refrigerated container set to -18° C (0° F) for the purpose of packing, stowing, refrigerating, and transporting the refrigerated Cargo over the course of its intended international carriage.

50.     ConGlobal, therefore, owed a duty of care to provide a refrigerated container set to the proper temperature to all who may foreseeably be injured by its failure to do so, including Tomex.

51.     ConGlobal breached that duty of care by failing to set the thermostat to -18° C (0° F) and, instead, setting it to +18°C (64.5° F).

6

52.     As a direct and proximate cause of ConGlobal's breach of its duty of care, the Cargo thawed and was rendered a total loss, causing Plaintiffs to sustain damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $69,356.55.

FIRST CAUSE OF ACTION AGAINST SUMMIT:
BREACH OF CONTRACT

53.     Paragraphs 1 through 52 are incorporated by reference as though fully set forth at length herein.

54.     Tomex and Summit entered into a valid, binding, and enforceable contract for the storage of the Cargo at Summit's Cold Store Facility.

55.     Tomex fully performed its obligations under the contract by, *inter alia*, paying Summit the agreed-upon storage fees.

56.     Summit was obligated under the contract to properly and safely handle, carry, keep, care for, discharge and deliver the Cargo in the same good order and condition as when received by it.

57.     Specifically, Summit was obligated to ensure the Cargo's temperature was maintained at -18° C (0° F) at all times.

58.     Summit breached those obligations by failing to recognize that the Container's temperature was set to +18° C (64.5° F) went it loaded the Cargo and failing to either (a) adjust the Container's thermostat to the required -18° C (0° F) or (b) instruct City Haul to do so.

59.     As a direct and proximate cause of Summit's breach, the Cargo thawed and was rendered a total loss, causing Plaintiffs to sustain damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $69,356.55.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the sum of $69,356.55, plus interest, costs, disbursements, and such other and further relief as this Court may deem just and proper.

JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  New York, New York         KENNEDY LILLIS SCHMIDT & ENGLISH
       December 12, 2017           Attorneys for Plaintiffs


By: *s/ Nathan T. Williams*
      Nathan T. Williams
      75 Maiden Lane, Suite 402
      New York, New York 10038
      Telephone (212) 430-0800

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on 12 December 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                                               *s/ Nathan T. Williams*
                                               Nathan T. Williams
                                               75 Maiden Lane, Suite 402
                                               New York, New York 10038
                                               Telephone (212) 430-0800